# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| DREW KATZ, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| SPINIELLO COMPANIES, et al., | )     **Civil Action No.: 16-11380** |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| SK TRAVEL, LLC, | ) |
| | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Third-Party Defendant.** | ) |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                         **December 12, 2016**

## I.      Introduction

Plaintiffs Drew Katz and Melissa Silver, individually and as the representatives of the

Estate of Lewis A. Katz ("Plaintiffs") have filed this lawsuit against Defendants SK Travel LLC

("SK Travel"), Spiniello Companies, Arizin Ventures LLC, Carol McDowell in her capacity as

representative of the estate of  James McDowell, Shelly de Vries in her capacity as representative

of the Estate of Bauke de Vries, Gulfstream Aerospace Corporation, Gulfstream Aerospace

Services Corporation, Rockwell Collins, Inc., Honeywell International, Inc., and the

Massachusetts Port Authority (collectively, "Defendants") alleging violations of some thirty

1

different Massachusetts and Florida state tort laws.  D. 1-2; 1-3; 1-4.  Defendant SK Travel filed a

third-party complaint against Dan Dillon, Paul A. Seguin, and Dominic Camilli, Jr., civilian

employees of the United States Air Force ("USAF Defendants") working in their official capacities

as employees of the United States government.  D. 1-1.  The U.S. Department of Justice ("Attorney

General") certified pursuant to 28 U.S.C. 2679(d)(2) ("The Westfall Act") that the USAF

Defendants were acting within the scope of their employment with the USAF at the time of the

conduct alleged in the third-party complaint and the case was removed to this Court pursuant to

28 U.S.C. §§ 1446, 2679(d)(2).  D. 1-6.  The United States has substituted itself in place of the

USAF Defendants.  Id.  Plaintiffs now seek to have this Court dismiss the third-party complaint

for lack of subject matter jurisdiction.  D. 86 at 2.  Alternatively, Plaintiffs request that the Court

strike Count II, the indemnification count, of the third-party complaint, pursuant to Fed. R. Civ. P.

12(b)(6).  Id.  If the Court decides not to dismiss the third-party complaint, Plaintiffs further ask

that the Court sever the third-party complaint from Plaintiffs' amended complaint and remand the

amended complaint to the Suffolk Superior Court.  For the reasons stated below, the Court

DENIES the motion in whole.

## II.      Standard of Review

Plaintiffs originally filed this case against the Defendants in Suffolk Superior Court.  D. 1-

2.  Upon SK Travel's filing of a third-party complaint against the USAF Defendants, the case, as

explained above, was removed to this Court pursuant to 28 U.S.C. 2679(d)(2).  D. 1.  "[T]he burden

is upon the removing party to show that federal subject matter jurisdiction exists, that removal was

timely, and that removal is proper."  Therrien v. Hamilton, 881 F. Supp. 76, 78 (D. Mass. 1995).

Because federal courts are considered courts of limited jurisdiction, "[t]he existence of subject-

matter jurisdiction 'is never presumed.'"  Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005)

(quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)).  Rather, "the party invoking the

jurisdiction of a federal court carries the burden of proving its existence." <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995) (internal quotation marks omitted).  Once a party challenges the jurisdictional basis for a claim under Rule 12(b)(1), the burden of proving jurisdiction falls on the party bringing the lawsuit in the federal forum.  <u>Aversa v. United States</u>, 99 F.3d 1200, 1209-10 (1st Cir. 1996); <u>Murphy</u>, 45 F.3d at 522.

## III.    Factual Allegations

These allegations are taken from the operative complaint and are presumed to be true only for the purposes of deciding the pending motion.  On May 31, 2014, a Gulfstream G-IV aircraft, Serial Number N121JM, (the "G-IV") piloted by Bauke de Vries and James McDowell crashed during its takeoff rotation as it was departing from Hanscom Field in Bedford, Massachusetts.  D. 1-2 ¶¶ 1, 59.  The accident resulted in the deaths of seven people, including Lewis A. Katz, his three companions, the flight attendant, and pilots Bauke de Vries and James McDowell, who were both employed by Defendant Spiniello Companies, Inc.  <u>Id.</u> ¶¶ 1, 8, 69.  The G-IV was owned by SK Travel at the time of the accident and was being dry leased by SK Travel to Defendant Arizin Ventures LLC.  <u>Id.</u> ¶¶ 7, 9.  The National Transportation Safety Board ("NTSB") determined that the pilots had failed to disengage the gust lock prior to takeoff, thus restricting the aircraft's primary controls and rendering the aircraft unable to pitch its nose up and take off after reaching rotation speed.  <u>Id.</u> ¶ 60.  The NTSB report further determined that the interlock mechanism manufactured by Defendant Rockwell Collins, Inc. which should have prevented the pilots from moving the throttles past a certain throttle level while the gust lock was engaged, failed to function properly.  <u>Id.</u> ¶ 61.  Had this mechanism functioned as intended, the aircraft would have been prevented from reaching a significant level of acceleration and the takeoff roll would not have been possible.  <u>Id.</u>  The NTSB investigation also determined that the throttle level angle could be

pushed upward of 27 degrees, more than four times greater than should have been possible with the gust lock in the "on" position.  Id. ¶ 62.

The Cockpit Voice Recorder ("CVR") revealed that the pilots failed to conduct industry-standard pre-flight checklists, which required them to ensure the aircraft's gust lock was not engaged prior to takeoff.  Id. ¶¶ 74-78.  When they reached rotation speed during takeoff, the pilots realized for the first time that the yoke would not move more than half a degree.  Id. ¶ 87.  Despite this problem, the pilots did not initially attempt to abort takeoff.  Id. ¶ 88.  Only after an additional eleven seconds had passed from the time the plane reached rotation speed did the pilots try to engage the brakes.  Id. ¶ 90.

Unable to takeoff, the G-IV continued off the runway and collided with the airfield's antennae, as well as the Medium-intensity Approach Lighting System with Runway Alignment Indicator ("MALSR") lights and a chain linked fence.  Id. ¶ 91.  After hitting these structures, the aircraft crashed into a downward sloped ravine.  Id. ¶ 92.  Members of Hanscom Field's fire and rescue services team responded to the fire that ensued.  Id. ¶ 127.  The team was composed of several employees of the United States Air Force ("USAF"), which maintained a contract with Defendant Massachusetts Port Authority ("Massport") to provide aircraft rescue and firefighting services at Hanscom Field Airport.  D. 1-1 ¶ 7.  Team members included Dan Dillon ("Dillon"), Paul A. Seguin ("Seguin"), and Dominic Camilli, Jr. ("Camilli") (collectively, "USAF Defendants").  Id.  The amended complaint alleges the fire crew was unprepared to fight the significant blaze that consumed the G-IV, did not reach the wreckage in a timely manner, and was not equipped to adequately fight the fire once the crew finally did reach it.  D. 1-2 ¶¶ 127-31.

**IV.    Procedural History**

Plaintiffs filed an amended complaint in this action on May 27, 2016, in Suffolk Superior Court, alleging numerous claims including, but not limited to, wrongful death predicated on negligence and breach of the implied warranty of merchantability, conscious suffering and unfair and deceptive trade practices.  D. 1-4.  On June 17, 2016, Defendant SK Travel filed a third-party complaint in the Suffolk Superior Court against Dillon, Seguin and Camilli.  D. 1-1.  The third-party complaint alleged the response of the fire and rescue services team was the proximate cause of the death of Plaintiffs' decedents and asserted that SK Travel may be entitled to contribution and indemnification for any judgment entered against it.  On June 30, 2016, the Attorney General certified pursuant to 28 U.S.C. 2679(d)(2) that the USAF Defendants were acting within the scope of their employment with the USAF at the time of the conduct alleged in the third-party complaint. D. 1-6.  On July 1, 2016, the United States filed a Notice of Removal with this Court removing the state action pursuant to 28 U.S.C. §§ 1446, 2679(d)(2) and substituted itself in place of the USAF Defendants.  D. 1.  Plaintiffs have now filed a motion to dismiss or sever the third-party complaint and to remand.  D. 86.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 130.

**V.    Discussion**

    **A.    Motion to Remand and the Westfall Act**

Plaintiffs argue that the doctrine of derivative jurisdiction precludes this Court from maintaining subject matter jurisdiction over SK Travel's third-party claims because the state court lacked jurisdiction to hear those same claims.  The derivative jurisdiction doctrine originated in the decision of <u>Lambert Run Coal Co. v. Baltimore & Ohio R.R.</u>, 258 U.S. 377 (1922) in which the Supreme Court stated: "[t]he jurisdiction of the federal court on removal is, in a limited sense,

a derivative jurisdiction.  If the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." Id. at 382; accord Minnesota v. United States, 305 U.S. 382, 389 (1939) (quotation omitted).  The First Circuit has recognized the existence of the derivative jurisdiction doctrine, noting, "a federal district court does not have removal jurisdiction over a claim that the state court lacked subject matter jurisdiction to decide in the first place."  Patriot Cinemas, Inc. v. General Cinemas Corp., 834 F.2d 208, 210 (1st Cir. 1987) (internal quotation marks omitted).

Here, however, the original state action was removed to federal court pursuant to the Westfall Act.  The Westfall Act amended provisions of the Federal Tort Claims Act ("FCTA"), providing absolute immunity of government employees for acts committed within the scope of their employment that amounted to common law torts.  See Osborn v. Haley, 549 U.S. 225, 229 (2007) (noting that the Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties").  Under the Westfall Act:

> [t]he remedy against the United States . . . for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1).  The Act further outlines a scheme whereby the Attorney General is given the authority to certify that the government employee is being sued for negligent or wrongful conduct that occurred within the scope of his employment.  28 U.S.C. § 2679(d)(1)-(2).

While no Court within the First Circuit appears to have addressed the question of whether the doctrine of derivative jurisdiction applies to cases removed under the Westfall Act, the vast majority of courts outside of this Circuit have held that the doctrine of derivative jurisdiction does not apply to such removals.  See, e.g., Nye v. Hilo Medical Center, No. 09-00200 JMS/KSC, 2010 WL 931926, at *4 (D. Haw. Mar. 11, 2010); E.R. v. Sutter Davis Hosp., No. 2:14-2053 WBS-CKD, 2014 WL 7239675, at *3 (E.D. Cal. Dec. 16, 2014); Rodas v. SwedishAmerican Health Sys. Corp., No. 05 C 50105, 2010 WL 4386678, at *4 (N.D. Ill. Oct. 29, 2010).  These holdings are consistent with the clear language of 28 U.S.C. § 2679(d)(2) that federal jurisdiction does not attach to the case until the Attorney General formally certifies that the federal employee was acting in the scope of his employment.  Until that point, there is nothing in the Westfall Act or FTCA that removes subject matter jurisdiction from the state court.  Before the certification issues, the suit is simply an action against individuals (here, Dillon, Seguin and Camilli) in their personal capacity.

Other Circuits have recognized that even the mere "possibility that such certification [under 28 U.S.C. § 2679(d)] might issue does not automatically divest a state court of subject matter jurisdiction.  To the contrary, in enacting 2679[(d)], Congress anticipated that suits initially would be brought in state court."  Thompson v. Wheeler, 898 F.2d 406, 409 n.2 (3d Cir. 1990) (citing McGowan v. Williams, 623 F.2d 1239, 1242 (7th Cir. 1980)).[1]  As noted above, § 2679(d)(2) states that "any civil action or proceeding commenced upon such claim in a State court shall be removed"

---

[1] The Court disagrees with Plaintiffs' characterization of the method of removal in Thompson v. Wheeler as not encompassing 28 U.S.C. § 2679(d).  D. 87, 7 n. 9.  While the notice of removal in that case relied on 28 U.S.C. § 1442(a)(1), the Third Circuit made clear that, "we are treating the government's response to our jurisdictional inquiry, that the matter could have been removed under 28 U.S.C. § 2679(d), as a request that we amend a defective allegative of jurisdiction as allowed by 28 U.S.C. § 1653. We will do that and thus are treating the petition for removal as including section 2679(d) as a basis for district court jurisdiction."  Thompson, 898 F.2d at 410.

to federal court upon the Attorney General's certification.  But "[i]f every action removed pursuant to § 1442(a) and § 2679(d)(2) were subject to dismissal because it was not properly brought in the state court, no case removed under the Westfall Act could ever survive in federal court."  Sutter Davis Hosp., 2014 WL 7239675, at *3 (quoting Anselmo v. Mull, 2:12-1422 WBS EFB, 2012 WL 3233274, at *2 (E.D. Cal. Aug. 6, 2012)).   Keeping in mind that "it rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought," Minnesota, 305 U.S. at 388, Congress could not possibly have expected the derivative jurisdiction doctrine to apply to removals pursued under the Westfall Act.   Indeed, "[i]f upon removal the doctrine of derivative jurisdiction were applied because the state court lacked [ ] jurisdiction over the FTCA claims, the federal district court would also lack jurisdiction, and the purpose of § 2679(d)(2) . . . would be thwarted because the action could never be removed to federal court."  Rodas, 2010 WL 4386678, at *4.  Furthermore, to accept Plaintiffs' argument that this Court lacks jurisdiction under the derivative jurisdiction doctrine, D. 129 at 6, would defy the rule against surplusage, which states that "a statute should be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  Nat. Org. for Marriage v. McKee, 649 F.3d 34, 66 (1st Cir. 2011) (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)) (internal quotation marks omitted).  Plaintiffs' argument ignores the text of § 2679(d)(2) concerning removal and, contrary to Plaintiffs' belief, would undermine the purpose of the statute.

Plaintiffs' reliance upon Barnaby v. Quintos, 410 F. Supp. 2d 142 (S.D.N.Y. 2005), to support their proposition that the derivative jurisdiction doctrine applies to 28 U.S.C. § 2679(d) removal cases, is unavailing.  In Barnaby, the plaintiff brought suit against a federally funded health clinic and its physicians, as well as a diagnostic lab company and its employees.  410 F. Supp. 2d at 142-43.  The Attorney General certified that the federally funded health clinic and its

physicians were federal employees acting within the scope of their employment.  As a result, the action was removed under 42 U.S.C. § 233, a removal provision analogous to 28 U.S.C. § 2679(d)(2), and the United States was substituted for the health clinic and its physicians.[2]  The district court, however, dismissed the action against the United States for failure to file first an administrative claim and remanded the case back to state court to proceed against the diagnostic lab company and its employees.  Barnaby, 410 F. Supp. 2d at 143.  Nearly eighteen months later, the lab defendants filed third-party claims against the federal clinic defendants in state court.  Once again, the federal clinic defendants removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1), 28 U.S.C. § 2679(d)(2), and 42 U.S.C. § 233(c).  Id.  This time, however, the district court held that the derivative jurisdiction doctrine applied.  The court there explained that, "the Attorney General had already certified that the Clinic defendants were federal employees acting within the scope of their employment in December 2003, prior to the dismissal of the case against those defendants for failure to exhaust administrative remedies.  Thus, the state court lacked jurisdiction at the time the case was removed in July 2005."  Id. at 147.  In other words, the state court had lost its subject matter jurisdiction when the certification was filed by the Attorney General the first time the case was removed to federal court.  Because "[t]he Attorney General's initial certification of the Clinic defendants on December 1, 2003, remained in force at the time the third-party complaint was filed and at all times thereafter," the state court could not have regained the subject matter jurisdiction it had once possessed.  Id.  Under this unique fact pattern, the Barnaby court could not find the derivative jurisdiction inapplicable.

---

[2] 42 U.S.C. § 233 is functionally identical to 28 U.S.C. § 2679(d)(2), except that it is limited to suits against federal employees "for damage[s] for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment."  42 U.S.C. § 233(a).

The facts presented here, however, mirror only the first stage of the <u>Barnaby</u> removal saga. Here, the Attorney General certified on June 30, 2016 that the USAF Defendants were working in their official capacity as employees of the United States at the time of the negligence alleged in SK Travel's third-party complaint.  D. 1-6.  This certification was attached to the July 1, 2016 notice of removal filed with this Court.  <u>Id.</u>  Much like the doctrine of derivative jurisdiction did not preclude federal jurisdiction when the federal employees in <u>Barnaby</u> were first certified by the Attorney General and the case was first removed to federal court, so too is the doctrine inapplicable in the instant situation.[3]

Plaintiffs also rely upon <u>Kennedy v. Paul</u>, No. 3:12-cv-01491 (VLB), 2013 WL 5435183, at *1 (D. Conn. Sept. 30, 2013) to support their motion to remand the case for lack of subject matter jurisdiction.  In <u>Kennedy</u>, the district court granted a motion to remand after concluding that the derivative jurisdiction doctrine applied to actions removed from state court pursuant to 28 U.S.C. § 2679(d)(2).  <u>Id.</u> at *1.  There, plaintiff sued in state court after being injured while participating in a shooting competition at an outdoor shooting range owned by Defendant.  <u>Id.</u> Defendant filed a third-party complaint against three individuals, members of the U.S. Coast Guard, whom it alleged induced the plaintiff to participate in the competition, and were also responsible for the operation and oversight of the competition.  <u>Id.</u>  With the removal to federal court, the Attorney General filed its certification about the Coast Guard defendants' scope of employment under Section 2679(d)(2).  <u>Id.</u> at *4, *5.

The Court is not persuaded by the reasoning of <u>Kennedy</u>.  First, the court looked to 28 U.S.C. § 1441 and found that in 2002 Congress explicitly eliminated the application of derivative

---

[3] Plaintiffs' reliance on <u>A.Q.C. v. Bronx-Lebanon Hosp. Ctr.</u>, No. 11-cv-2656 (NRB), 2012 WL 170902, at *5 (S.D.N.Y. Jan. 20, 2012), is similarly misplaced as the factual circumstances in that case were substantially similar to those in <u>Barnaby</u>.

jurisdiction under that statute.  <u>See</u> 28 U.S.C. § 1441(f).  The court was persuaded by the fact that "the text of section 1441(f) explicitly states that it applies to cases removed 'under this section.'" <u>Id.</u> at *2.  It theorized that in enacting § 1441(f), Congress meant to preserve the doctrine of derivative jurisdiction in cases removed under other statutes.  This hypothesis, however, ignores a key distinction between the plain language of § 2679(d)(2) and the text of removal statutes like § 1441.  While § 2679(d)(2) contains affirmative language mandating a case be removed to federal court upon the Attorney General's certification, that language is absent from other removal statutes.  Instead, unlike in § 2679(d)(2), removal to federal court is discretionary.  <u>See</u> 28 U.S.C. § 1441 (providing that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . .); <u>see also</u> 28 U.S.C. § 1442 (providing that "[a] civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States").  The language in § 2679(d)(2), in other words, demonstrates Congress' expectation that claims against federal employees would continue to be brought in state court and that the federal court would acquire jurisdiction upon the Attorney General's certification.  While Congress needed to abrogate expressly the derivative jurisdiction doctrine in a statute like § 1441, there was no such need in § 2679 where the statute adequately expressed Congress' intention to limit the application of the derivative jurisdiction doctrine by making removal compulsory upon the Attorney General's certification.  Plaintiffs suggest that in 2002, when Congress changed the text of § 1441, it could have written the law to say "removed under this Section *and under Section 2679(d)(2)*".  D. 129 at 8 (emphasis in original).  The text of § 2679, however, already speaks for itself; it conclusively mandates removal

to the federal court upon Attorney General certification and anticipates initial filings in state court. Congress had no need to alter the statute to make its intentions clear in the same way such an alteration was needed for § 1441.

Second, the derivative jurisdiction doctrine applies only when the state court never had jurisdiction in the first place. Indeed, in Kennedy, when the third-party complaint was filed, the state court properly maintained jurisdiction given that the third-party defendants were sued in their individual capacity. Only once the Attorney General certified their employment under 28 U.S.C. § 2679 did that change. There is nothing in 28 U.S.C. § 2679 that says subject matter jurisdiction disappears when there is a mere possibility that the Attorney General might certify a party as being in the employment of the United States. Cf. Kennedy, 2013 WL 5435183, at *5.

Third, the Kennedy court took unnecessary umbrage with the fact that "[t]he [Attorney General's] executed certification was filed with the Notice of Removal [], meaning that it must have been executed at least a moment before the Notice of Removal was filed with this Court." Id. The court concluded that "[i]n that moment the state court lost jurisdiction, and therefore did not have jurisdiction at the time of removal." Id. This analysis for the reasons discussed above, however, would render 28 U.S.C. § 2679 effectively meaningless.[4]

Moreover, the Supreme Court has held that once a case has been removed pursuant to § 2679(d) certification, the district court must retain jurisdiction over the case. Osborn, 549 U.S. at 249. That is, the Attorney General's certification "is conclusive for purposes of removal." Id.

---

[4] The Court finds Plaintiffs' reliance on Jiron v. Christus St. Vincent Reg. Med. Ctr., 960 F. Supp. 2d 1147, 1147 (D.N.M. 2012) to be similarly unpersuasive. The facts and analysis in that case largely resemble Kennedy, and the Court therefore finds it inapplicable here. See 1-5 Jayson & Longstreth, Handling Federal Tort Claims § 5.10 n.13 (noting that "[t]his holding [in Jiron v. Christus St. Vincent Reg. Med. Ctr.] appears to be erroneous, since there is no indication that the state court lacked jurisdiction over the claims against the clinic and the doctor absent the [scope of employment] certification").

at 230.  In making such a determination, the Supreme Court recognized the unique nature of the

Westfall Act when compared to other removal statutes noting:

> Ordinarily, when the plaintiff moves to remand a removed case for lack of subject-matter jurisdiction, the federal district court undertakes a threshold inquiry; typically the court determines whether complete diversity exists or whether the complaint raises a federal question.  In Attorney General certified Westfall Act cases, however, no threshold determination is called for; the Attorney General's certificate forecloses any jurisdictional inquiry.

Id. at 243.  In light of the Osborne, courts have recognized that "§ 2679(d)(2) provides a conclusive

basis for federal subject matter jurisdiction in all cases." Kebaish v. Inova Health Care Servs., 731

F. Supp. 2d 483, 487 (E.D. Va. 2010); see Anselmo, 2012 WL 3233274, at *2 n.1 (relying on

Osborne to note that while there are a few pre-Osborne cases "in which courts dismissed a case

removed under the Westfall Act for lack of subject matter jurisdiction under the derivative

jurisdiction doctrine . . . [s]uch cases . . are contrary to the great weight of authority").

   For all of these reasons, the Court concludes that it has  subject matter jurisdiction over this

matter.  Accordingly, the Court DENIES Plaintiffs' motion to dismiss under Fed. R. Civ. P.

12(b)(1).

### B.    Motion to Dismiss/Motion to Strike

   Plaintiffs have, alternatively, asked the Court to dismiss SK Travel's indemnification claim

against the United States, Count II, pursuant to Fed. R. Civ. P. 12(b)(6).  D. 86.  The Court declines

to do so because Plaintiffs do not have standing to assert a Rule 12(b)(6) defense on behalf of the

United States.  "Standing is the determination of whether a specific person is the proper party to

bring a particular matter to the Court for adjudication."  Benjamin v. Aroostook Med. Ctr., Inc.,

57 F.3d 101, 104-05 (1st Cir. 1995) (internal citation omitted) (internal quotation marks omitted).

In determining standing, "prudential considerations must be taken into account."  Ramírez v.

Sánchez Ramos, 438 F.3d 92, 98 (1st Cir. 2006).  These "prudential concerns require a plaintiff to show that she is seeking to protect her own legal rights (rather than those of a third party)."  Id. Here, SK Travel has filed a third party complaint against the United States.  Plaintiffs have not shown that they are seeking to protect their own legal rights in seeking dismissal of SK Travel's third-party claims against the United States.  Whether SK Travel succeeds on its third-party claims has no bearing on the eventual outcome of Plaintiffs' original action.  Plaintiffs rely on Zurich American Ins. v. Lord Elec. Co. of Puerto Rico, 828 F. Supp. 2d 462, 467 (D.P.R. 2011), to argue that "[a]lthough Rule 14 does not explicitly provide for a motion to dismiss third-party claims, the federal courts have entertained both motions to dismiss and motions to strike and have not drawn distinctions between them," D. 129 at 3.  In Zurich American, however, it was the third-party defendants that had moved to dismiss a third-party plaintiff's third-party complaint.  Id. at 463. The crux of third-party defendant's argument there was that pursuant to Fed. R. Civ. 14(a)(1), the third-party complaint had improperly impleaded the third-party defendants.  Id. at 464.  The Zurich American court never addressed the issue of standing because it did not need to do so.  The court was presented with a third-party defendant's motion to dismiss that incorporated some Rule 14(a) arguments.  There was no question in that case as to whether the third-party defendant's legal rights were implicated by claims being directly asserted against it.  Consequently, the court did not need to address standing.  Here, a non-party to the third-party action is attempting to assert a defense on behalf of the third-party defendant.  Plaintiffs have no right to seek dismissal of claims brought in the third-party complaint.  See Century Mfg. Co., Inc. v. Central Transp. Intern., Inc., 209 F.R.D. 647, 647 (D. Mass. 2002) (concluding that plaintiffs lack standing to challenge the voluntary dismissal of a third-party action because plaintiffs are "not a party to the third-party action").

Assuming Plaintiffs meant to move to strike SK Travel's indemnification claim against the United States under Rule 14(a)(4), the Court would also deny that motion. Rule 14(a)(4) states that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately," and gives the Court the authority to strike a third-party claim "if it is obviously unmeritorious and can only delay or prejudice the disposition of plaintiff's claim." See Fed. R. Civ. P. 14(a) advisory committee's note to 1963 amendments. In assessing the merits of this motion, however, the Court recognizes that a "defending party may, as third-party plaintiff, serve a . . . complaint on a nonparty who is or may be liable to it for all or part of the claim against it," Fed. R. Civ. P. 14(a)(1), and the court "should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 393 (1st Cir. 1999). Moreover, to the extent that Rule 14(a)(4) is analogous to Rule 12(f), which governs non-third-party motions to strike, such motions are "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." Boreri v. Fiat S.P.A., 763 F.2d 17, 23 (1st Cir. 1985). "Even when technically appropriate, motions to strike are not typically granted absent a showing of prejudice to the moving party." United States v. Sampson, No. 01-10384-MLW, 2011 WL 5022651, at *28 (D. Mass. October 20, 2011). Plaintiffs here assert that SK Travel's indemnification claim against the United States is "plainly unmeritorious." D. 87 at 9. But, SK Travel has asserted a tort-based right to indemnification, arguing that "there is a great disparity in the fault of the parties." D. 118 at 16 n.12 (quoting Araujo v. Woods Hole, Martha's Vineyard, Nantucket SS. Auth., 693 F.2d 1, 2 (1st Cir. 1982). The facts at this point have yet to be established, so the respective fault of the various parties cannot be determined. As such, Plaintiffs cannot demonstrate that SK Travel's claims lack merit at this stage of the litigation. Indeed, their arguments are clearly "based on their own construction of [SK

Travel's] conduct and liability," which is an inappropriate basis for granting a motion to strike. See Riva v. Ashland, Inc., 09-CV-12074-DJC, 11-CV-12269-DJC, 11-CV-12277-DJC, 2013 WL 1222393, at *16 (D. Mass. Mar. 26, 2013).  Thus, the Court DENIES Plaintiffs' motion to strike.

## C.     Motion to Sever

Plaintiffs have also asked this Court to sever the third-party complaint from the amended complaint and to remand the amended complaint to state court.  Courts may "sever any claim against a party," Fed. R. Civ. P. 21, and "[t]he decision to separate parties or claims is a case management determination peculiarly within the discretion of the trial court."  Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003) (quotations and citations omitted).  In deciding whether severing a claim is appropriate, the Court considers "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims."  Spinal Imaging Inc. v. State Farm Mut. Auto. Ins. Co., No. 12-CV--11498–RWZ, 2013 WL 1755200, at *4 (D. Mass. Apr. 24, 2013).  In evaluating these various factors, the Court must remember that "all declinations of supplemental jurisdiction should be reserved for situations in which there are compelling reasons."  PVD Plast Mould Industries, Ltd. v. Polymer Group, Inc., No. 2:98–2929–23, 2001 WL 1867801, at *15 (D.S.C. Feb. 1, 2001) (quoting David D. Siegel, Practice Commentary, appended to 28 U.S.C. § 1367 (1993), pp. 835-36).  Here, no such compelling reasons exist and the Court denies the motion.

The claims present in the amended complaint and SK Travel's third-party complaint arise out of the same operative facts.  Both complaints allege a negligent response to the fire that ensued following the crash of the Gulfstream aircraft.  Plaintiffs allege that Massport entered into an

agreement with the USAF under which the USAF was responsible for rescue and firefighting services and that the USAF's firefighting response after the accident was insufficient, proximately causing the death of Lewis Katz.  D-12 ¶¶ 123, 465, 480.  The third-party complaint alleges that the negligent actions of the USAF firefighting crew proximately caused the death of Lewis Katz and that, as such, SK Travel should be able to seek contribution or indemnification from the United States in the event it is found liable in the original action.  D. 1-1, ¶¶ 9-18.  The event underlying both of these claims is the same.  This overlap in allegations weighs in favor of denying the motion to sever.

The factual allegations and theories of negligence presented in both the amended complaint and the third-party complaint are also overlapping.  Indeed, to prove the allegations presented in each complaint, the parties will likely need the same or similar discovery.  Moreover, severing the third-party complaint and remanding the amended complaint would result in duplicative proceedings.  Such duplicative proceedings would not only strike against judicial economy, but would also prejudice the United States.  The United States is afforded the right under Fed. R. Civ. P. 14(a)(2)(c) to "assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim."  This is necessary because SK Travel's claims against the United States for contribution and indemnification are dependent on whether SK Travel is found liable in the original action.  The United States would lose its ability to assert defenses on behalf of SK Travel if Plaintiffs' claims were litigated in a separate forum than SK Travel's claims against the United States.

Judicial economy is not served by severing the third-party complaint.  Since SK Travel's third-party complaint was filed, two additional defendants have filed crossclaims against the United States for contribution and indemnity.  D. 102 (Spiniello Crossclaim); D. 107 (Arizin

amended answer and crossclaim).  Furthermore, the Court expects that additional litigation against the United States arising from the accident may arise.  D. 117-1 (estate of Teresa Ann Benhoff's administrative action against the USAF); D. 117-2 (Massport's administrative action against the Air Force).  Thus, there are other parties that may file suit against the United States in federal district court.  Id.  Because the plane crash occurred in the state of Massachusetts, this Court would be the proper venue to bring such an action.  See 28 U.S.C. § 1402(b) ("Any civil action on a tort claim against the United States . . . may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred").  While the Benhoff estate could conceivably bring the action in the District of Maryland, see id. ("[a]ny civil action on a tort claim against the United States . . . may be prosecuted . . . in the judicial district where the plaintiff resides"), the United States has already indicated it would move to transfer the case to this District and consolidate newly filed lawsuits with this action.  D. 117 at 12.  Given the multiple claims currently alleged against the United States coupled with the probability that more claims may be filed against the United States, this Court finds that conservation of judicial resources would best be served by trying all of these separate, yet related actions in a single forum.

Plaintiffs also support their motion to sever by relying on 28 U.S.C. § 1367(c), which gives the federal district court the discretion to decline to exercise its supplemental jurisdiction over a state-law claim when, among other factors, "the claim raises a novel or complex issue of State law."  D. 87 at 18.  Plaintiffs argue that this Court will be required to determine (1) whether the "dangerous instrumentality" doctrine applies in the courts of Massachusetts and whether Mass. Gen L. c. 90, § 35(j) which outlines when airplane owners and lessees "are in operation of the aircraft" bestows a private right of action to injured plaintiffs; (2) whether the "borrowed servants" theory applies to this case; and (3) how to use Massachusetts' long-arm statute.  D. 87

18

at 19.  Judges in this district have previously been asked to interpret the borrowed servant doctrine and Massachusetts long-arm statute.  See, e.g., Boston Post Partners II, LLP v. Paskett, No. 15-CV-13804-FDS, 2016 WL 3746474, at *6-8 (analyzing whether the court had personal jurisdiction over defendants pursuant to the Massachusetts long-arm statute); Roderick v. Bugge, 584 F. Supp. 626, 628 (D. Mass. 1984) (analyzing whether a crane operator who was provided by a crane lessor was a borrowed servant).  Judges in this Circuit have also addressed the statutory provisions codified at Mass. Gen. L. c. 90.  See, e.g., Breneman v. United States ex rel. FAA, 381 F.3d 33, 39 (1st Cir. 2004) (considering Mass. Gen. L. c. 90, § 39); Rectrix Aerodome Ctrs., Inc. v. Barnstable Mun. Airport, 534 F. Supp. 2d 201, 203-205 (D. Mass. 2008) (discussing Mass. Gen. L. ch. 90, §§ 51D-51N).  There is nothing to suggest this Court will be unable to analyze the applicable state statutes in this case.  Because there are no compelling reasons for the Court not to exercise its supplemental jurisdiction, the Court DENIES the motion to sever.

## VI.     Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' motion to dismiss or sever the third-party complaint and to remand, D. 86.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

19