**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| ) | |
| ) | |
| **DREW KATZ et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| **v.** ) | |
| ) | |
| **SPINIELLO COMPANIES et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | **Civil Action No. 16-11380** |
| **SK TRAVEL, LLC,** ) | |
| ) | |
| **Third-Party Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |
| ) | |
| ) | |

_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                           **March 22, 2017**

## I.      Introduction

This case arises out of a May 31, 2014 airplane crash that occurred in Bedford, Massachusetts during the takeoff rotation of a Gulfstream G-IV aircraft, killing all passengers onboard.  Plaintiffs Drew Katz and Melissa Silver ("Plaintiffs"), individually and as the co-personal representatives of the estate of Lewis A. Katz, a passenger on the flight, have filed this lawsuit against numerous defendants including Gulfstream Aerospace Corporation (Georgia) ("Gulfstream Georgia"), Gulfstream Aerospace Corporation (Delaware) ("Gulfstream Delaware"), Gulfstream Aerospace Services Corporation ("Gulfstream Services") and Rockwell

1

Collins, Inc. ("Rockwell"), alleging claims of wrongful death and conscious suffering predicated on theories of negligence and breach of the implied warranty of merchantability.  D. 1-3, 1-4. Plaintiffs have also brought claims under Mass. Gen. Laws c. 93A.  D. 1-3, 1-4.  Rockwell, Gulfstream Services, Gulfstream Georgia and Gulfstream Delaware have all moved to dismiss for lack of personal jurisdiction.  D. 64, 67, 70, 82.[1]  For the reasons set forth below, the Court GRANTS all but Gulfstream Services' motion to dismiss.

## II.    Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, a district court must apply the prima facie standard of review.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, Plaintiffs must "demonstrate the existence of every fact required to satisfy both the forum's long arm statute and the Due Process Clause of the Constitution," to meet their burden pursuant to Fed. R. Civ. P. 12(b)(2).  Id. (citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings.  Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  In doing so, the Court will "not "credit

---

[1] There is also a motion to dismiss for failure to state a claim or, alternatively, a motion for a more definite statement filed by the United States that is pending on the docket.  D. 140.  The United States concedes that the motion is now moot in light of cross-claimants Spiniello Companies and Arzin Ventures, LLC having amended their third-party complaints against the United States.  D. 144, 145.  Given that the United States has now filed answers to the amended complaint, D. 150, 151, the Court DENIES the United States motion to dismiss as moot.  D. 140.

conclusory allegations or draw farfetched inferences," Ticketmaster-N.Y., 26 F.3d at 203, and must keep in mind that Plaintiffs need to "do more than simply surmise the existence of a favorable factual scenario; [they] must verify the facts alleged through materials of evidentiary quality." Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)).   "Thus, allegations in a lawyer's brief or legal memorandum are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." Id. (quoting Barrett, 239 F.3d at 27).  The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

## III.    Factual Allegations

These allegations are taken from the operative complaint and the affidavits filed by Gulfstream Services, Gulfstream Georgia, Gulfstream Delaware and Rockwell in support of their motions to dismiss.  For the purposes of the instant motions, the Court presumes the allegations put forth by the Plaintiffs to be true and also considers the Defendants' uncontradicted factual allegations.  The Court has already extensively laid out the alleged facts in this case in its December 12, 2016 Order regarding Plaintiffs' motion to remand, D. 135, and incorporates the articulation of those facts into this Memorandum and Order.   Thus, for present purposes, the Court only recounts facts relevant to the motions to dismiss of Gulfstream Georgia, Gulfstream Delaware, Gulfstream Services and Rockwell.

On May 31, 2014, a Gulfstream G-IV aircraft, Serial Number N121JM, (the "G-IV") crashed during its takeoff rotation as it was departing from Laurence G. Hanscom Field in Bedford, Massachusetts.  D. 1-2 ¶¶ 1, 59.  The accident resulted in the deaths of seven people, including Lewis A. Katz, his three companions, the flight attendant and pilots.  Id. ¶¶ 1, 8, 69.

Gulfstream Georgia, a corporation organized and existing under the laws of the state of Georgia, designed and manufactured the G-IV.  D. 66 ¶¶ 3, 7.  Gulfstream Georgia neither has any design or manufacturing facilities in Massachusetts nor is it registered or authorized to do business in the Commonwealth.  Id. ¶¶ 4, 5.  No agent for service of process exists for Gulfstream Georgia in Massachusetts and Gulfstream Georgia has not consented to jurisdiction in Massachusetts.  Id. ¶ 4.  In addition, Gulfstream Georgia does not utilize a network of distributors or retailers in the sale of its aircraft, instead opting to sell its aircraft directly to consumers.  Id. ¶ 6.  The G-IV at issue here was sold by Gulfstream Georgia to Rim Air LLC, a Delaware corporation, in 2000.  D. 66 ¶ 9; D. 66-1.  Rim Air LLC subsequently sold the G-IV to SK Travel LLC ("SK Travel"), a North Carolina corporation that is a separate defendant in this case, in 2007.  D. 66 ¶ 10; D. 66-2.  Prior to the initial sale of the G-IV, Gulfstream Georgia never tested, operated or serviced the aircraft in Massachusetts.  D. 66 ¶ 8.  At present, Plaintiffs have filed suit in Georgia state court against Gulfstream Georgia that is a near-identical lawsuit to the instant action.  D. 71 at 2.

Gulfstream Delaware, the parent holding company of Gulfstream Georgia and Gulfstream Services, is not incorporated in Massachusetts and does not have its principal place of business in Massachusetts.  D. 69 ¶¶ 3-4.  Additionally, Gulfstream Delaware is not registered or authorized to do business in Massachusetts, does not have an agent for service of process here and has never consented to jurisdiction in Massachusetts.  Id. ¶ 8.  Gulfstream Delaware did not design or manufacture the particular G-IV that crashed in Bedford, nor has it designed or manufactured any other G-IV or any other component of a G-IV aircraft.  Id. ¶ 7.

Gulfstream Services is the wholly-owned subsidiary of Gulfstream Delaware and is organized under the laws of the state of Delaware.  D. 72 ¶¶ 3-4.  Gulfstream Services' corporate headquarters are in Georgia.  Id. ¶ 3.  Like Gulfstream Delaware, Gulfstream Services did not

design or manufacture the particular G-IV that crashed in Bedford, nor has it designed or manufactured any other G-IV or any other component of a G-IV aircraft.  Id. ¶ 6.  Gulfstream Services has also never been the type certificate holder for the Gulfstream G-IV product line, which was instead held by Gulfstream Georgia.  Id. ¶ 5.  Rather, Gulfstream Services specializes in the repair and maintenance of Gulfstream aircraft and it has several service facilities located throughout the country, including one in Westfield, Massachusetts (the "Westfield Facility").  Id. ¶ 7.  Gulfstream Services' business records reveal that employees from the Westfield Facility provided maintenance to the G-IV on a single occasion in January 2013.  Id. ¶ 8; D. 72-1.  On that occasion, the G-IV's auxiliary power unit ("APU") was malfunctioning and, at the request of SK Travel, two technicians were sent from the Westfield Facility to repair the issue in Delaware.  D. 72 ¶ 8.

Rockwell designed, manufactured and sold the G-IV's interlock mechanism and gust lock at issue in this case.  D. 1-4 ¶¶ 354, 358.  Rockwell does not have an office in Massachusetts; it has never had a principal place of business in Massachusetts; it does not maintain bank accounts in Massachusetts; nor has it ever manufactured any component of the gust lock system in Massachusetts or sold, marketed or distributed the gust lock system to a Massachusetts customer.  D. 83-1 ¶¶ 5-11.  Rockwell delivered the last pedestal assembly in 2004 and the last G-IV sector assembly in 2008 and neither was to Massachusetts.  Id. ¶ 11.  In 2001, Rockwell registered as a foreign corporation to do business in Massachusetts and also identified a registered agent in the Commonwealth.  Id. ¶ 12.  From 2001 until 2005, Rockwell leased property in Massachusetts, but it has not leased any property since that time, and does not own property in Massachusetts.  Id. ¶ 13.  Additionally, for one month—from January 1, 2013 until February 1, 2013—Rockwell had one employee, out of its 19,000 employees, who was located in Massachusetts.  Id. ¶ 14.

IV.     **Procedural History**

Plaintiffs filed an amended complaint in this action on May 27, 2016 in Suffolk Superior Court.  D. 1-4.  The case was removed to this Court on July 1, 2016.  D. 1.  Gulfstream Services, Gulfstream Georgia and Gulfstream Delaware subsequently filed motions to dismiss for lack of personal jurisdiction.  D. 64, 67, 70.  Rockwell also filed a motion to dismiss for lack of personal jurisdiction.  D. 82.  On July 29, 2016, Plaintiffs filed a motion to remand this case to state court, D. 86, and this Court otherwise stayed the case pending resolution of that matter.  D. 112.  After denying the motion to remand, D. 135, the Court heard the parties on the pending motions on February 9, 2017 and took these matters under advisement.  D. 170.

V.      **Discussion**

The Court's personal jurisdiction over a defendant may derive from either general or specific jurisdiction.  Plaintiffs do not maintain that this Court has general jurisdiction over Rockwell, Gulfstream Services, Gulfstream Georgia or Gulfstream Delaware and, as such, the Court must only determine whether Plaintiffs have asserted facts sufficient to exercise specific jurisdiction over these defendants.  To establish specific personal jurisdiction, Plaintiffs "must demonstrate that the Massachusetts long-arm statute grants jurisdiction over [them] and that the exercise of that jurisdiction comports with the Due Process Clause of the Fifth Amendment." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).  The First Circuit, however, has "construed the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution."  Adelson v. Hananel, 652 F.3d 75, 80-81 (1st Cir. 2011) (footnote omitted).  It is, therefore, acceptable to "sidestep the statutory inquiry and proceed directly to the constitutional analysis."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

Due process requires the Court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (citing N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 16 (1st Cir. 2009); N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The Court must find that all three are present to assert personal jurisdiction over a defendant. See id. Accordingly, the Court shall now address this three-prong standard as to each of the Defendants.

### A.   **Rockwell**

#### 1.   *Relatedness*

Plaintiffs allege no facts that would satisfy the relatedness prong as it pertains to Rockwell. The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09-cv-10138-DJC, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (alterations in original) (quoting Astro-Med, 591 F.3d at 9). This is a "flexible, relaxed standard," id. (quoting Astro-Med, 591 F.3d at 9), but still requires a causal relationship between Plaintiffs' claim and Defendants' forum-related conduct. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Though not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props. Ltd. v. W. Goebel

Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)).  "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case."  Id. at 61 (alteration in original) (quoting United Elec., Radio & Mach. Workers of Am. V. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).  Furthermore, a court may have specific jurisdiction in situations where there is only a single contact with the forum state, but that contact must be "meaningful."  Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 717 (1st Cir. 1996) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n. 18 (1985); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Here, Plaintiffs' claims against Rockwell are premised on the allegation that the G-IV's gust lock system, which the pilots had failed to disengage prior to takeoff and which allegedly contributed to the crash, contained "design defects, manufacturing defects, and inadequate and unreasonably dangerous instructions and warnings."  D. 1-4 ¶¶ 354, 358.  Rockwell, however, has never manufactured any part of the gust lock system in Massachusetts, nor has it marketed, sold or distributed this component in the Commonwealth.  D. 83-1 ¶¶ 9-10.  Plaintiffs have not contested these facts.  Although Rockwell registered as a foreign corporation to do business in Massachusetts and briefly rented space and had a single employee here, id. ¶¶ 12-14, these limited contacts do not relate to Plaintiffs' allegations regarding the gust lock system.  Harrell v. Repp, 759 F. Supp. 2d 128, 131 (D. Mass. 2010) (finding no personal jurisdiction where "[n]one of [Defendant's] supposed contacts is connected to the litigation").  As such, the Court cannot conclude that any of Plaintiffs' claims against Rockwell relate to Rockwell's alleged negligence or misconduct in Massachusetts.

2.    *Purposeful Availment and Stream of Commerce*

While the Court does not need to reach the purposeful availment prong given its findings as to the relatedness prong, the Court nevertheless addresses this issue.  "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state."  Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391).  The inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319).  Plaintiffs argue that Rockwell has purposefully availed itself of the laws of Massachusetts by putting its gust lock product into the stream of commerce.  D. 164 at 7.  They contend that "[u]nder the 'stream of commerce plus' doctrine, a court may exercise personal jurisdiction when the defendant delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."  Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)).[2]  Asahi Metal Industries Co. v. Superior Court of California, 480 U.S. 102 (1987) notes:

---

[2] The First Circuit has not clarified whether the stream of commerce plus theory applies only to the purposeful availment prong or whether it is equally applicable to the relatedness prong.  D. 164 at 8 n. 2.  The Supreme Court has intimated that the stream of commerce theory is tied to the purposeful availment requirement, J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881-82 (2011) (noting that "[t]he principle inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign . . . the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law" (alteration in original) (citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704-05 (1982)); Hanson, 357 U.S. at 253, however, the issue has never been squarely resolved.  Courts in this Circuit have applied the stream of commerce plus standard to the purposeful availment prong.  See, e.g., Newman, 2011 WL 2413792, at *5 (declining to apply the "stream of commerce plus" standard to the relatedness analysis); JKA, Inc. v. Anisa Int'l Inc., No. 07-cv-00123-S, 2008 WL 4949126, at *8 (D.R.I. Nov.13, 2008) (discussing the stream of commerce plus theory in the context of its purposeful availment analysis while separately addressing relatedness); Tower Mfg. Corp. v. Shanghai Ele

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Id. at 112. Accordingly, to conclude that a defendant has purposely availed itself of the laws of the forum state under a stream of commerce plus theory, there must be more than a mere awareness or expectation that a defendant's product will end up in the forum state. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992).

Plaintiffs rely on Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG., 26 Mass. App. Ct. 14 (1988), in support of their position that this Court has specific jurisdiction over Rockwell under the stream of commerce plus doctrine. D. 164 at 8-11. In that case, the defendant, a German company that designed a machine in Germany, sold its product to a Swiss company, that then sold the machine to a distributor in Illinois. Heins, 26 Mass. App. Ct. at 15. The Illinois distributor subsequently sold the machine to the plaintiff's employer in Massachusetts. Id. at 15, 17. The plaintiff was injured while installing the machine and sued the German corporation in

---

Mfg. Corp., 533 F. Supp. 2d 255, 268-69 (D.R.I. 2008) (same); In re Lupron Mktg. & Sales Practices Litig., 245 F. Supp. 2d 280, 297-98 (D. Mass. 2003) (finding that under the stream of commerce plus theory, the defendant's contact with the state were sufficient to show purposeful availment); Ranahan v. Pheasant Wilsons, Inc., No. 95cv-00005-SD, 1995 WL 502412, at *3-8 (D.N.H. May 2, 1995) (addressing the stream of commerce plus theory in purposeful availment analysis while separately addressing relatedness). As such, the Court sees no reason to deviate from that approach here. The Court notes, however, that its outcome would remain the same regardless of whether the applicability of the stream of commerce doctrine were analyzed under the relatedness and/or the purposeful availment prong.

Massachusetts.   Id.   After the trial court dismissed for lack of personal jurisdiction, the Massachusetts Appeals Court reversed.   Id. at 27.   In doing so it explained that:

> if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.  The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

Id. at 22.  The Heins court then examined the "plus" factors central to the stream of commerce plus test.  These factors, the Court reasoned, necessarily informed its determination regarding whether specific jurisdiction existed.   Id. at 25.   The court made the following observations:  (1) the defendant sold completed machines to the Illinois distributor knowing that the distributor would then sell them in Massachusetts; (2) the cost of the machines was quite high, at about $56,000 each; (3) it was common for the defendant's employees to visit Massachusetts to service the machines; (4) the defendant had sold numerous machines within Massachusetts, even though sales were effected by an exclusive distributor not owned by manufacturer; and (5) defendant's employees would also use their servicing visits to promote the sale of their machine product line to other potential customers, which resulted in substantial revenue for the foreign defendant company from customers in the Commonwealth.  Id. at 25.  With these factors in mind, the Court concluded that "[w]hen considered cumulatively, we think these facts support a finding of sufficient minimum contacts brought about by the purposeful acts of the defendant directed toward Massachusetts, so that the assertion of specific personal jurisdiction over the defendant by the Superior Court is consonant with due process."  Id.

Here, the Court must similarly examine any relevant "plus" factors.  Plaintiffs, however, have not alleged any contacts between Rockwell and Massachusetts which relate to the gust lock system.  Rather, the complaint speaks in broad terms, stating that Rockwell "operates various business entities throughout the Commonwealth of Massachusetts and does substantial, systematic, and continuous business in Massachusetts by availing itself of business opportunities, advertising the availability of its parts and services, selling and shipping its parts to Massachusetts residents and entities, and then communication with its Massachusetts customers about airworthiness, repairs, maintenance, and pricing information."   D. 1-2 ¶ 48.   Unlike Heins, Rockwell did not act directly to cultivate a market for its product in Massachusetts.  D. 83-1 ¶ 10. It did not send its employees to advertise its product in the Commonwealth.  Id.  Nor did it sell a completed product to consumers in Massachusetts, as the defendant in Heins did, but instead manufactured a constituent component of the G-IV.  Id.; see Skyworks Sols., Inc. v. Kinetic Techs. HK Ltd., No. 13-cv-10655-GAO, 2015 WL 461920, at *3 (D. Mass. Feb. 4, 2015) (distinguishing Heins by noting that "the foreign defendant sold completed machines, not components").  Indeed, unlike the machine in Heins which was sold by the dozens to Massachusetts consumers through a distributor, there is no allegation or proffered evidence that a single gust lock system has ever been sold in this Commonwealth by Rockwell, a distributor or any other entity.  See D. 83-1 ¶ 10.

Plaintiffs' argument seems to suggest that personal jurisdiction can be sufficiently established under a stream of commerce theory simply because the gust lock system—at some point after it was manufactured outside of Massachusetts, sold outside of Massachusetts and installed in an aircraft outside of Massachusetts—found itself within this Commonwealth by chance.  But mere presence in the forum state is not sufficient to establish minimum contacts or the stream of commerce plus standard.  See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus

Aircraft Ltd., 566 F.3d 94, 105 (3d Cir. 2009) (noting that "it is absolutely fatal to appellants' stream-of-commerce argument that the subject aircraft did not actually enter Pennsylvania through a 'stream of commerce' as that term is generally understood—i.e., 'the regular and anticipated flow of products from manufacture to distribution to retail sale'") (citation omitted).

Here, where Rockwell took no actions that caused the gust lock device to end up in Massachusetts and the gust lock did not enter the Commonwealth through the commonly conceptualized notion of "stream of commerce," this Court cannot assert personal jurisdiction under a stream of commerce theory. See Newman, 2011 WL 2413792, at *8-10.

### 3.    Reasonableness

Lastly, Plaintiffs have not succeeded in demonstrating the reasonableness of subjecting Rockwell to this Court's jurisdiction.  The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 33 n.3 (1st Cir. 2010) (quoting Harlow, 432 F.3d at 67).  "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717.

The Court sees no burden Rockwell would face in being forced to appear in a Massachusetts court.  Indeed, the First Circuit has made clear that when analyzing the first Gestalt factor, the Court must bear in mind that "it "is almost always inconvenient and/or costly" for a foreign defendant to have to appear in a foreign jurisdiction. Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).  That said, "this factor is only meaningful where a party can demonstrate some kind of

special or unusual burden." Id. Rockwell has simply stated that appearing in Massachusetts would be "onerous," D. 83 at 19, but it has failed to explain why or how appearing here would present a unique problem or burden.  As such, this factor favors Plaintiffs.

The second factor, however, weighs heavily against keeping Plaintiffs' lawsuit against Rockwell in this forum.  Neither the Plaintiffs nor Rockwell are citizens of Massachusetts.  The alleged wrongful conduct committed by Rockwell—manufacturing and designing a gust lock system with defects that contributed to the crash of the G-IV—did not take place in Massachusetts and did not cause any injury to citizens of the Commonwealth.  While Massachusetts may have an interest in regulating the safety of its airspace and preventing deadly accidents at its airports, D. 164 at 11-12, "[t]he evidence shows that the only nexus between this litigation and Massachusetts is the location of the accident which 'is not . . . enough to establish its substantial interest in [the] suit.'"  Newman, 2011 WL 2413792, at *10 (quoting Merced v. JLG Indus., Inc., 193 F.Supp.2d 290, 295 (D. Mass. 2001)).

As to the third factor, 'while "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience," Sawtelle, 70 F.3d at 1395, in light of the aforementioned reasons, especially the fact the Plaintiffs are not citizens of the Commonwealth, the Court does not discern any specific reason why Massachusetts would be a particularly more convenient forum when compared to other alternatives.  See id. (finding the third Gestalt factor relevant where "unquestionably, it would be more convenient for the [Plaintiffs] to litigate their malpractice claim in their home state rather than elsewhere").  Moreover, the fact that other defendants may be subject to jurisdiction in Massachusetts does not tip the scales in favor of the Plaintiffs under this prong.  Newman, 2011 WL 2413792, at *11 (holding that the argument

that a foreign defendant "should be subject to personal jurisdiction in Massachusetts because several other defendants are subject to suit here is unavailing").

The fourth Gestalt factor, which examines the judicial system's interest in obtaining the most effective resolution of the case is "generally considered a 'wash.'" Id. at *11 (quoting Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45-46 (D. Mass. 1997)).  This is particularly true where, as here, it is not obvious that the "most efficient path for the judicial system . . . is to move forward with the lawsuit in the present form," Hasbro, 994 F. Supp. at 46, or that the "efficient administration of justice favors a Massachusetts forum" in an unequivocal way. Nowak, 94 F.3d at 718-19.

Finally, under the fifth factor, the Court evaluates the common interests of all sovereigns in promoting substantive social policies.  But, in light of the other Gestalt factors, even if Massachusetts arguably has an interest in resolving the liability issues pertaining to an airplane crash occurring within its borders, that interest is not enough to tip the scale in favor of establishing personal jurisdiction over Rockwell in the Commonwealth.  This is particularly true where the Massachusetts-based interests (e.g., interest in the operation of a Massachusetts airport) are addressed by Plaintiffs' claims against other Defendants (e.g., Massport) and not this particular defendant.

Accordingly, the Court GRANTS Rockwell's motion to dismiss for lack of personal jurisdiction.

### B.    Gulfstream Services

#### 1.    Relatedness

Again, to satisfy the relatedness prong, Plaintiffs would need to show that "the cause of action either arises directly out of, or is related to, [Gulfstream Services'] forum-based contacts."

Harlow, 432 F.3d at 61.  In other words, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.  The proper question is not where the plaintiff experienced the particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  Walden v. Fiore, 134 S. Ct. 1115, 1125 (2014). Plaintiffs contend that the Court has personal jurisdiction over Gulfstream Services on the basis that technicians from the company's Massachusetts facility performed maintenance on the G-IV prior to its crash in May 2014 "on at least one prior occasion."  D. 1-2 ¶ 39; D. 161 at 6-7.

Plaintiffs allege—and Gulfstream Services confirms—that in January 2013 two Gulfstream Services' employees traveled from the company's facility in Massachusetts to Delaware to perform maintenance on the G-IV.  D. 161 at 6-7; D. 72 ¶ 8.  After servicing the G-IV, as Plaintiffs claim, the Gulfstream Services' technicians signed a "return to service" form which certified that the G-IV was airworthy.  D. 1-2 ¶¶ 120-21; D. 1-4 ¶¶ 345-46.  Plaintiffs argue that because the G-IV's gust lock system was faulty, the G-IV was not airworthy and, therefore, Gulfstream Services breached its duty of care in connection with any inspection, maintenance, service, repair and certification of the G-IV.  D. 1-2 ¶¶ 120-21; D. 1-4 ¶¶ 345-46.  Gulfstream Services counters, however, that the January 2013 service of the G-IV had nothing to do with the gust lock system which Plaintiffs allege to be a contributing cause of the crash.  D. 72 ¶ 8; D. 1-2 ¶¶ 102-07.  Specifically, the maintenance record from the January 2013 service of the G-IV shows that the Gulfstream Services' technicians were sent to Delaware to work on an issue related to the G-IV's APU system.  D. 72-1 at 3.  Moreover, Gulfstream Services challenges the purported scope of the certification contained in the "return to service" form, claiming it certified only that "[t]he maintenance [completed] was performed in accordance with current Federal Aviation Regulations and [the G-IV was] approved for return to service with regards to the maintenance accomplished."

D. 71 at 13; D. 72 ¶ 8.  That is, they maintain that the "return to service" form only certified that the aircraft met FAA regulations as relevant to the APU system.

In considering issues of personal jurisdiction, the Court may consider, as previously noted, "facts put forward by the defendant[], to the extent they are uncontradicted." Stars for Art Prod. FZ, LLC v. Dandana, LLC, 806 F. Supp. 2d 437, 442 (D. Mass. 2011) (quoting Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 135 (D. Mass. 2006)).  Here, Gulfstream Services' proffer as to the servicing of the APU system itself is uncontradicted.  Moreover, Plaintiffs make no allegations in the operative complaint about the APU system or how it relates to the gust lock system that allegedly contributed to the crash.  Instead, Plaintiffs contends, without specific support, that the APU and gust lock systems might be related.  D. 161 at 9 (arguing that "[a]t this point, it is not at all clear that the repaired part had nothing to do with the gust lock system.  Nor is it at this point clear whether the Subject Aircraft's significant gust lock defects should or could have been discovered during that January 2013 repair").  As to the certification, however, although Gulfstream Services insists that the certification only concerned the specific repairs performed in January 2013, this document does not, as Plaintiffs point out, D. 161 at 8-9, clearly stand for such limited guarantee.  Id. at 9-10; see D. 72-1.  Moreover, Gulfstream Services' factual claim regarding the scope of the certification is contradicted by Plaintiffs' allegations in the operative complaint.  D. 1-2 ¶¶ 120-21; D. 1-4 ¶¶ 345-46.  Therefore, in analyzing its jurisdiction, the Court considers the maintenance record proffered by Gulfstream Services to the extent it demonstrates that the January 2013 service of the G-IV concerned the APU system, but not the company's claim that the certification only concerned the APU system or that the certification only demonstrated the airworthiness of the APU system.  Although it is perhaps a close question, but mindful of the prima facie standard applying here, it is at least plausible that the Gulfstream Services technicians'

17

alleged conduct has a causal relationship to Plaintiffs' negligence claim against Gulfstream Services. The Court finds that Plaintiffs have adequately alleged a "meaningful" connection between their claim and Gulfstream Services' activities in Massachusetts.

### 2.    Purposeful Availment

"In determining whether the purposeful availment condition is satisfied, [the] 'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." Copia Commc'ns, 812 F.3d at 5. Here, there is no dispute that Gulfstream Services has purposefully availed itself of the benefits and protections of Massachusetts law. D. 161 at 11; see D. 71. Plaintiffs adequately allege numerous facts evidencing Gulfstream Services' voluntary connections to Massachusetts which make it foreseeable that the company could be hauled into court here. See Phillips Exeter, 196 F.3d at 292. These allegations include: (1) the operation of the Westfield Facility that employs over 225 people; (2) the receipt of $4 million in tax-incentives from the Commonwealth since 2011 to expand the facility; and (3) more than $5 million in state-funded improvements to perimeter roads at the facility, provided at the request of the Gulfstream Services. D. 161 at 11. Given that the alleged actions of the maintenance employees at the Westfield Facility have a direct link to the claims brought against Gulfstream Services, Plaintiffs have met their burden under the purposeful availment prong of the inquiry by sufficiently demonstrating that Gulfstream Services has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, [and has] thus invoke[d] the benefits and protections of its laws." Hanson, 357 U.S. at 253.

### 3.    Reasonableness

The Court also agrees with Plaintiffs that the balance of the Gestalt factors weigh in favor of exercising jurisdiction over Gulfstream Services.

First, considering Gulfstream Services' contacts with Massachusetts, the burden on the company of appearing before the Court is relatively low.  Moreover, because it "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction . . . the defendant must demonstrate that exercise of jurisdiction in the present circumstance is onerous in a special, unusual, or other constitutionally significant way."  Hilsinger Co. v. FBW Invs., 109 F. Supp. 3d 409, 429 (D. Mass. 2015) (quoting Nowak, 94 F.3d at 717) (internal quotations omitted). Gulfstream Services has not done so here.  Second, a state also has a heightened interest in obtaining jurisdiction where the alleged injury occurred within the state's borders.  See Nowak, 94 F.3d at 717 (citing Ticketmaster-N.Y., 26 F.3d at 210).  Although Katz was not a Massachusetts resident at the time of the crash, D. 1-2 ¶ 6, the Court nevertheless has an interest in exercising jurisdiction over claims arising from an incident that occurred within Massachusetts where it is alleged that employees from a facility within the Commonwealth may have been negligent in certifying the G-IV's airworthiness.  Third, Plaintiffs' "choice of forum must be accorded a degree of deference," Hilsinger, 109 F.Supp.3d at 429 (citing Nowak, 94 F.3d at 717), and so "the plaintiff[s'] interest in obtaining convenient and effective relief" also supports the Court exercising jurisdiction.  Fourth, the First Circuit has recognized that the interest of judicial economy "counsels against furcation of a dispute among several different jurisdictions."  Pritzker, 42 F.3d at 64; see Bermudez v. Newlong Mach. Works, Ltd., 98 F. Supp. 3d 47, 55 (D. Mass. 2015).  Plaintiffs argue "this litigation will proceed in Massachusetts against the remaining defendants . . . with or without Gulfstream Services," suggesting that judicial economy, therefore, will be best served by the Court exercising jurisdiction.  D. 161 at 13.  This argument is not entirely convincing because the Court dismisses the claims against Rockwell and the other Gulfstream entities and so there will likely be duplicative litigation even if the Court also dismisses the claims against Gulfstream Services.

While the analysis of this factor does not favor the exercise of jurisdiction here, neither does it provide support for not exercising jurisdiction here against Gulfstream Services.  Fifth, and finally, Plaintiffs argue that "Massachusetts has a powerful interest in regulating the safety of its airspace and in preventing deadly accidents at its airports," D. 161 at 13, yet, as the Court has already noted, Plaintiffs' claims against other Defendants advance this interest.  Like the fourth factor, then, the fifth Gestalt factor does not weigh clearly in favor of the exercise of personal jurisdiction or dismissal.  In sum, the balance of the Gestalt factors supports the reasonableness of the Court exercising jurisdiction over Gulfstream Services.

While it is a close question whether Gulfstream Services' in-forum conduct is sufficiently related to Plaintiffs' cause of action, the other jurisdictional inquiries—purposeful availment and reasonableness—provide stronger support for an exercise of specific jurisdiction.  For these reasons, the Court finds that it has personal jurisdiction over Plaintiffs' claims against Gulfstream Services and the Court DENIES Gulfstream Services' motion to dismiss.

## C.   Gulfstream Delaware and Gulfstream Georgia

In their briefing, Plaintiffs essentially concede that Gulfstream Delaware and Gulfstream Georgia do not have sufficient contacts with Massachusetts on their own to satisfy the relatedness and purposeful availment prongs of the First Circuit's specific jurisdiction test.  Astro-Med, 591 F.3d at 9.  For Gulfstream Delaware, Plaintiffs instead ask the Court to impute Gulfstream Services' Massachusetts contacts to Gulfstream Delaware on the basis that the companies are agents of one another.  D. 162 at 3.  As to Gulfstream Georgia, Plaintiffs argue for specific jurisdiction on the basis of a "stream of commerce plus" theory.  D. 163 at 10-17.  The Court is unpersuaded by either argument and finds that it lacks jurisdiction over both Gulfstream Delaware and Gulfstream Georgia.

### 1.    *Gulfstream Delaware*

As an initial matter, both Plaintiffs and Gulfstream Delaware are uncertain about which law controls the question of whether to impute Gulfstream Services' Massachusetts contacts to Gulfstream Delaware.  Gulfstream Delaware argues that the correct law to apply is Georgia law on piercing the corporate veil—although the company also fortifies its argument with support from Massachusetts and Delaware law on piercing the corporate veil.  D. 68 at 12-16.  Plaintiffs counter that their theory for imputing Gulfstream Services' contacts to Gulfstream Delaware is rooted in agency law, not piercing the corporate veil or an alter ego test.  D. 162 at 11 n.7.  Plaintiffs, however, do not address the choice of law problem raised by Gulfstream Delaware and instead rely on "basic principles" of agency law as applied in federal court opinions.  Id. at 11-14.  The Court first considers, then, which law should inform its analysis.

Where, as here, the underlying legal claims are state law claims, the Court must found its decision on state law principles.  See In re Lernout & Hauspie Securities Litig., 337 F. Supp. 2d 298, 321-22 (D. Mass. 2004) (applying Massachusetts agency and alter ego law to plaintiffs' state law claims).  Under the applicable state law, it is not clear to the Court that the Plaintiffs have drawn a meaningful distinction between an agency theory and an alter ego theory.  Plaintiffs rely on In re Lernout for this distinction, which in turn relies on Dagesse v. Plant Hotel N.V.[3]  D. 162 at 11; see In re Lernout, 337 F. Supp. 2d at 313 (citing Dagesse v. Plant Hotel N.V., 113 F. Supp. 2d 211, 216 n. 2 (D.N.H., 2000)).  In Dagesse, the court considered whether the contacts of a hotel management company could be imputed to the company that owned the hotel property.  Dagesse,

---

[3] The In re Lernout court also cited SGI Air Holdings II LLC v. Novartis International AG, which treats agency and alter ego as distinct theories but admits that both theories "often depend on the same facts when parent and subsidiary corporations are involved."  239 F. Supp. 2d 1161, 1166 (D. Colo. 2003).

113 F. Supp. 2d at 214. The two companies were not in a parent-subsidiary relationship but were instead in a contractual relationship for the purposes of running the hotel, and so the court analyzed the personal jurisdiction issue as a matter of agency law. Id. at 216-18. The Dagesse court acknowledged that the basis for its analysis would have been different if the companies were in a parent-subsidiary relationship. Id. at 216 n.2. "This issue of agency is distinct from the issue of whether a parent corporation is subject to personal jurisdiction based on the contacts of its subsidiary, a question that depends upon the piercing of the corporate veil." Id. (citing Diaz De Castro v. Sanifill, Inc., 198 F.3d 282, 283-84 (1st Cir. 1999)). In other words, while it is true that an agency theory is legally distinct from a veil piercing theory, in the context of a parent-subsidiary relationship, the theory for imputing contacts from one entity to another is a theory based on piercing the corporate veil. Id.

Massachusetts courts have taken a similar approach, treating the question of whether an agency relationship exists between a parent and subsidiary as a component of the veil piercing analysis. My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968) (suggesting that the decision to pierce the corporate veil depends on whether the "facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities"); PDC-El Paso Meriden, LLC v. Alstom Power, Inc., No. 99-6016-BLS, 2002 WL 1492201, at *7 (Mass. Super. Ct. May 31, 2002) (collapsing the analysis of whether an agency relationship exists between a parent and subsidiary into the analysis of whether to pierce the corporate veil); see Askenazy v. Tremont Grp. Holdings, Inc., No. CIV.A. 2010-04801-BLS2, 2012 WL 440675, at *8 (Mass. Super. Ct. Jan. 26, 2012) (noting that a court will only impute a subsidiaries contacts to a parent "[u]nder Massachusetts law . . . upon a showing tantamount to what is necessary to pierce the corporate veil"), aff'd sub nom. Askenazy v. KPMG LLP, 83 Mass. App. Ct. 649 (2013). The

Court, therefore, will analyze Plaintiffs' argument for imputing Gulfstream Services' Massachusetts connections to Gulfstream Delaware according to the applicable state law standards for piercing the corporate veil.

"Massachusetts law is not entirely settled regarding whether determinations about piercing a corporation's veil should automatically be made under the law of the state of incorporation, or whether the place of incorporation is one of a number of factors considered." Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 99 (D. Mass. 2015) (collecting and analyzing cases). Yet, Massachusetts courts that have considered whether to pierce the corporate veil for the specific purpose of determining personal jurisdiction have generally applied Massachusetts law regardless of the state of incorporation. See, e.g., Scott v. NG U.S. 1, Inc., 450 Mass. 760, 767 n.13 (2008); Kleinerman v. Morse, 26 Mass. App. Ct. 819, 823 (1989); Askenazy, 2012 WL 440675, at *8; PDC-El Paso, 2002 WL 1492201, at *7-8; Johansen v. Budget Rent A Car Sys., Inc., No. 931316, 1995 WL 809495, at *3-4 (Mass. Super. Ct. May 31, 1995). In its brief, Gulfstream Delaware assumes that Plaintiffs' veil piercing theory is predicated on the corporate relationship between Gulfstream Delaware and Gulfstream Georgia. D. 68 at 12. From this assumption, Gulfstream Delaware argues that Georgia law is controlling because Gulfstream Georgia is not only incorporated in Georgia but Plaintiffs' substantive allegations against Gulfstream Georgia concern its Georgia operations. Id. But Plaintiffs' brief makes clear that their theory depends instead on the corporate relationship between Gulfstream Delaware and Gulfstream Services. D. 162 at 3, 10. Gulfstream Services is a Delaware corporation and Plaintiffs' substantive allegations against the company concern its Massachusetts operations. D. 1-2 ¶¶ 15, 120-21; D. 1-4 ¶¶ 345-46. The applicable law, then, appears to be that of either Delaware or Massachusetts, and not Georgia. Ultimately, however, the Court agrees with Gulfstream Delaware that the choice of law between

Georgia, Delaware or Massachusetts does not materially differentiate the analysis or result in this case.  D. 68 at 13 n.5.

Under Georgia law, a court may "exercise of personal jurisdiction over a parent corporation if the parent's control over the subsidiary's activities is so complete that, the subsidiary is, in fact, merely a division or department of the parent." Drumm Corp. v. Wright, 755 S.E.2d 850, 854 (Ga. 2014) (quoting Sol Melia, SA v. Brown, 688 S.E.2d 675, 681 (2009)).  Yet, so long "as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." Id. (quoting Vogt v. Greenmarine Holding, LLC, No. 01–cv-0311J-OF, 2002 WL 534542, at *5 (N.D. Ga. Feb. 20, 2002)).  Delaware employs a similar standard, asking "whether the parent corporation dominates the activities of the subsidiary." EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V., No. 3184-VCP, 2008 WL 4057745, at *11 (Del. Ch. Sep. 2, 2008) (quoting Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc., 456 F. Supp. 831, 841 (D. Del. 1978)).  "Thus, a subsidiary is not an agent of its parent merely because the parent:  holds a majority of the subsidiary's shares, shares officers and directors with the subsidiary, or finances the operations of the subsidiary." Id.  Massachusetts also requires the "[s]ignificant exercise of control by an out-of-State parent corporation over a subsidiary and significant intermingling of officers and directors between parent and subsidiary . . . to establish jurisdiction in the State where the subsidiary is conducting its business operations." Kleinerman, 26 Mass. App. Ct. at 823 (citing Willis v. Am. Permac, Inc., 541 F. Supp. 118, 122 (D. Mass. 1982)).  In other words, there must be evidence of "active and direct participation" by the parent in the affairs of the subsidiary. PDC-El Paso, 2002 WL 1492201, at *7 (declining to impute subsidiary's contacts to parent even where there was "a confused intermingling of activity of [the

two corporations] engaged in a common enterprise" (quoting <u>My Bread Baking</u>, 353 Mass. at 619)).

Plaintiffs have not alleged sufficient facts to establish that Gulfstream Services is a "division or department" of Gulfstream Delaware, that Gulfstream Delaware "dominates" Gulfstream Services or that Gulfstream Delaware is "active[ly] and direct[ly] participat[ing]" in the corporate affairs of Gulfstream Services. <u>Drumm Corp.</u>, 755 S.E.2d at 854; <u>EBG Holdings</u>, 2008 WL 4057745, at *11; <u>PDC-El Paso</u>, 2002 WL 1492201, at *7. Most of Plaintiffs' allegations concerning the relationship between Gulfstream Delaware and Gulfstream Services appear typical of a parent-subsidiary relationship (i.e., shared corporate headquarters, senior officers and webpage). D. 162 at 12-13; <u>see</u> <u>Donatelli v. Nat'l Hockey League</u>, 893 F.2d 459, 465-66 (1st Cir. 1990) (noting, in general, that courts will only assert jurisdiction over a parent based on the contacts of the subsidiary where there is a "'plus' factor . . . beyond the subsidiary's mere presence within the bosom of the corporate family"). The remaining allegations (i.e., joint employment listings and shared maintenance and billing forms) potentially evidence "a confused intermingling of activity" between Gulfstream Delaware and Gulfstream Services, but do not rise to the level of a "significant exercise of control." <u>Id.</u> at 12-13; <u>see</u> <u>Kleinerman</u>, 26 Mass. App. Ct. at 823; <u>PDC-El Paso</u>, 2002 WL 1492201, at *7. Even if the Court were to apply the "basic principles" that Plaintiffs glean from <u>In re Lernout</u>, which does apply Massachusetts state law to both the alter ego and agency theories, the Court would reach the same conclusion. <u>In re Lernout</u>, 337 F. Supp. 2d at 319-22. While Plaintiffs identify eight factors that supported the existence of an agency relationship in <u>In re Lernout</u>, Plaintiffs have only alleged facts to support a few of those factors. <u>See</u> D. 162 at 12-13. Crucially, Plaintiffs have failed to allege facts to suggest that Gulfstream Services is "set up solely to carry out the business of the parent," "exist[s] only to do the work of

[Gulfstream Delaware]" or is "thinly capitalized" or "depend[s] entirely on the funds received from [Gulfstream Delaware]." Id. On the whole, Plaintiffs have not alleged or proffered sufficient facts for the Court to disregard the separate corporate forms of Gulfstream Delaware and Gulfstream Services for the purposes of determining the Court's jurisdiction.

For these reasons, the Court declines to impute Gulfstream Services' Massachusetts contacts to Gulfstream Delaware and finds that it lacks personal jurisdiction over Plaintiffs' claims against Gulfstream Delaware. Accordingly, Gulfstream Delaware's motion to dismiss for lack of personal jurisdiction is GRANTED.

2.  *Gulfstream Georgia*

Plaintiffs begins by arguing that the Court has jurisdiction over Gulfstream Georgia under the traditional First Circuit test of relatedness, purposeful availment and reasonableness. D. 163 at 7-10. Plaintiffs, however, do not allege any facts to support a causal connection between their claims against Gulfstream Georgia and the company's Massachusetts contacts. Rather, Plaintiffs allege generally that "there is reason to believe that the negligent repairs conducted on the [G-IV] in January of 2013 were carried out by employees of Gulfstream Georgia who were—under what circumstances, the Plaintiffs cannot now say—stationed at the Gulfstream Services facility in Westfield." D. 163 at 7-8. Plaintiffs' argument, therefore, relies on the theory that Gulfstream Georgia and Gulfstream services are in fact operating as a single entity. Id. at 8. After all, Plaintiffs have separately argued that the January 2013 repairs of the G-IV were carried out by Gulfstream Services employees. Id. at 8; D. 161. The Court has already rejected such a theory in connection with Gulfstream Delaware and Gulfstream Services and Plaintiffs have not alleged any additional facts specific to Gulfstream Georgia that would lead to a different outcome here. See D. 163 at 8. As to purposeful availment, Plaintiffs ask the Court to consider Gulfstream Georgia's marketing

efforts directed at Massachusetts as well as the fact that the company has historically sold aircraft to Massachusetts residents.  D. 163 at 9.[4]  Yet, Plaintiffs have not shown how these facts relate to any claim in the present lawsuit.  See Copia Commc'ns., 812 F.3d at 5.

The Court briefly addresses the stream of commerce argument as to Gulfstream Georgia to distinguish its earlier stream of commerce analysis related to Rockwell.   Unlike Rockwell, Gulfstream Georgia is not simply the manufacturer of a single aircraft component, but rather is the manufacturer of the G-IV.   Also, while Plaintiffs make a series of broad claims about Gulfstream Georgia's Massachusetts-directed commercial activity, Plaintiffs do cite the fact "that at least 10 Gulfstream Georgia aircraft are currently owned or operated by Massachusetts citizens or entities." D. 163 at 13-14.   Nevertheless, the Court does not find that these factual distinctions compel a different legal result.   Plaintiffs argue, in part on the basis of these distinctions, that they present a stronger case for jurisdiction under a stream of commerce theory than was present in Heins.  Id. Unlike Heins, however, where the defendant's product was sold into Massachusetts through a stream of commerce, here the G-IV did not enter the state through a stream of commerce, but rather entered the Commonwealth's borders fortuitously during a scheduled flight.   Heins, 26 Mass. App. Ct at 15, 17.   Furthermore, construing the stream of commerce doctrine to reach defendants like Gulfstream Georgia would eliminate any limiting principle.  See D'Jamoos, 566 F.3d at 105 (refusing to exercise jurisdiction over a party whose product, also an aircraft, did not enter the state through a conventional stream of commerce).   Because Gulfstream Georgia took no actions that caused the G-IV to make its way to Massachusetts, any reliance upon the stream of commerce theory is unavailing.  See Newman, 2011 WL 2413792, at *8-10.  Moreover, Plaintiffs'

---

[4] Plaintiffs suggest that the Massachusetts contacts of Gulfstream Services can be imputed to Gulfstream Georgia for the purposes of assessing purposeful availment too and, again, the Court declines to do so for the reasons explained above.

allegation that Gulfstream Georgia knew that the G-IV had previously traveled into Massachusetts, D. 1-2 ¶ 42, is insufficient because stream of commerce plus requires more that "'mere awareness' that a product may end up in the forum state." <u>Boit</u>, 967 F.2d at 683.

Finally, Plaintiffs argue that it would be reasonable for the Court to exercise jurisdiction over Gulfstream Georgia under the Gestalt factors.  D. 163 at 9-10.  The Court, however, views the reasonableness analysis as to Gulfstream Georgia as indistinguishable from that which it has already conducted as to Rockwell.  Accordingly, the Court does not believe it would be reasonable to exercise jurisdiction over Gulfstream Georgia.

For these reasons, the Court GRANTS Gulfstream Georgia' motion to dismiss for lack of personal jurisdiction.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS the motions to dismiss of Gulfstream Georgia, Gulfstream Delaware and Rockwell, D. 64, 67, 82, DENIES Gulfstream Services' motion to dismiss, D. 70, and DENIES the motion to dismiss of the United States as moot, D. 140.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge