UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Drew Katz and Melissa Silver, individually and as the co-Personal Representatives of the Estate of LEWIS A. KATZ, deceased,

    Plaintiffs,

v.

SPINIELLO COMPANIES, et al.,

    Defendants.

SK TRAVEL, LLC, et al.,

    Third-Party Plaintiffs,

v.

UNITED STATES OF AMERICA,

Third-Party Defendants.

CASE NO. 1:16-CV-11380-DJC

**THE PLAINTIFFS' REPORT ON THE STATUS OF DISCOVERY**

**I.   Update on discovery**

On April 30, 2018, the Court instructed the Plaintiffs to begin producing those documents whose relevance was not in dispute. The next day, the Plaintiffs began to run search terms against a universe of more than two million emails, after which the Plaintiffs—with the assistance of ten contract attorneys hired solely for this project—began reviewing for relevance and responsiveness more than one-hundred thousand emails that filtered through the search term application process. The Plaintiffs have simultaneously begun to segregate privileged

communications and will soon begin to build a comprehensive privilege log, which in its final form will contain thousands of entries.

The Plaintiffs have also begun the laborious process of training the Technology Assisted Review ("TAR") platform—a process that has required two Podhurst associates to review more than one-thousand documents in the last two weeks alone—with the ultimate goal of making the document review more efficient by eliminating the need for human reviewers. As a result of these efforts, on May 16, 2018, the Plaintiffs turned over to the Defendants an additional 9,846 pages of discovery in what will prove to be the first of several productions we expect to make this month. This first rolling production was accompanied by more than 80 pages of detailed responses and objections to each of the Defendants' 76 production requests. With the continued calibration of TAR, the Plaintiffs expect each of the succeeding rolling productions to be even more voluminous than the first.

To summarize, then, as of this writing, the Defendants have received—either from the Plaintiffs directly or from our accountants—349,995 pages of damages-related document discovery. This includes: 66,340 pages as part of the Plaintiffs' initial disclosures, 39,161 pages as discrete discovery in response to the Defendants' RFP,[1] 234,648 pages from Mr. Katz's accounting firm (all of which the Plaintiffs' attorneys reviewed prior to production), and 9,846 pages as part of this first rolling production.

In addition to all this, the Plaintiffs have started the process of crafting search terms and applying them to several-thousand pages of discovery in response to the liability requests propounded by the Estate of Carol McDowell. The Plaintiffs likewise expect to produce a substantial proportion of these documents by the end of the month.

---

[1] The Defendants' First Set of Requests for Production of Damages Documents.

The Plaintiffs have also begun to ingest, apply search terms to, and review the cell phone records of Kathleen Palella and Nancy Zemlak—a process that should be completed over the next few weeks—and, consistent with the Defendants' request, we have arranged for our ESI vendor to conduct a post-accident analysis of Lewis Katz's damaged cell phone. The Court should know that any delay in processing this phone resulted from the Defendants', not the Plaintiffs', inactivity. In fact, on April 12, 2018, the Plaintiffs sent the Defendants a proposed protocol for the retrieval of any information still contained on this phone. The Defendants failed to respond for ***four weeks*** until, finally, on May 10, 2018, the Plaintiffs raised the issue on a telephone call—at which point the Defendants' ESI vendor conceded that he had no problem with the Plaintiffs' proposed protocol.

Finally, as promised, the Plaintiffs have provided the Defendants with detailed "hit reports," which outline the unprecedented overbreadth of the Defendants' search terms.

## II. The Defendants are the primary source of delay

In their papers to the Court, the Defendants have portrayed the Plaintiffs as dilatory and carp again about the need for an extension they have been requesting for months—an extension the Court has already three times denied them. But it is rather the Defendants who are doing everything in their power to delay the progress of fact discovery in a concerted effort to make their case for the extension they have always wanted. We give but a few obvious examples.

***First, the hard-copy documents***: On January 5, 2018, the Plaintiffs proposed a three-tiered review protocol for the tens of thousands of damages-related documents that the Katz Family keeps in hard-copy, rather than digital, form. Under this protocol, (1) the Plaintiffs would scan, review, and produce the hundreds of boxes of documents that we believe are clearly relevant to the issues in this case (Tier 1); (2) the Plaintiffs would allow the Defendants to enter

the Katz Family's warehouse to review and, if they wish, to take any of the tens of thousands of hard-copy documents housed there—documents we believe are irrelevant to the issues in this case (Tier 2); and (3) the Plaintiffs would create a privilege log for the thousands of hard-copy documents possessed by the Katz Family's lawyers (Tier 3).[2] For more than three months, the Defendants failed either to agree or disagree with this protocol. Finally, on April 11 and 12, 2018, the Defendants sent a team of lawyers to the various Katz Family facilities to map out the layouts of those facilities and to count the number of Tier 2 boxes they would later need to inspect and review. Given the Defendants' repeated complaints about the discovery timeline, the Plaintiffs fully expected the Defendants to conduct this review over the following weeks. Instead, since April 12, 2018, the Defendants have made absolutely no effort to schedule any such inspection or review.

**_Second, the Blackstone subpoena_**: In September of 2017, the Defendants served an expansive subpoena on Blackstone, a private equity company that did business alongside Mr. Katz. Blackstone has objected to the overbreadth of that subpoena—a subpoena that, in many ways, mirrors the overbroad RFP—and the Defendants, in turn, have done nothing to compel Blackstone's production. In fact, counsel for Blackstone has not heard from the Defendants since February—this, despite the Defendants' insistence that they have been doing everything in their power to move discovery along in this case. Indeed, the Defendants' inactivity on the Blackstone subpoena is striking because of their repeated suggestion that the documents in Blackstone's possession go to the heart of their defense of this case—namely, that Blackstone's A.J. Agarwal, not Lewis Katz, was the true genius behind the Katz Family's financial success.

---

[2] To give the Court a sense of the burden here, just the act of scanning these hard-copy documents will cost the Plaintiffs more than $100,000.

*__Third, defense depositions__*: In their efforts to cast their forthcoming motion to extend in a more compelling light, the Defendants have made no effort to schedule even a single deposition in this case. And it is no answer for the Defendants to say that they have failed to schedule depositions because they do not have the documents they need. After all, as of this writing, they have not scheduled the deposition of any of Mr. Katz's accountants—this, despite the fact that they received hundreds of thousands of pages of document discovery from Mr. Katz's accountants in the middle of January. And, again, the Defendants have taken no steps to compel the production of A.J. Agarwal's Blackstone documents or, it goes without saying, to schedule his deposition. No less significantly, the Defendants have failed to set even a single one of Lewis Katz's many physicians for a deposition, despite being in possession of Mr. Katz's medical records for years.

*__Fourth, Plaintiff depositions__*: The Defendants' lack of diligence in scheduling depositions contrasts rather starkly with the Plaintiffs' persistent efforts to complete their fact discovery by the Court-appointed deadline. In fact, the Plaintiffs have already conducted the deposition of one key witness, Mrs. McDowell, and have attempted to schedule the depositions of two others, Don Felter and Mrs. De Vries. With respect to the latter, the Defendants have refused to provide the Plaintiffs even with available dates for her deposition. With respect to the former, the Defendants originally agreed to a deposition date of June 12, 2018—a date that was cleared with both the Defendants and the Plaintiffs. Then, earlier this week, the Defendants retracted this agreement on the excuse that they were no longer available on June 12 and that they thought it best to depose Mr. Felter after his deposition was completed in another case. As of this writing, then, despite the Plaintiffs' efforts, the Defendants have failed to provide available dates for either deposition.

***Fifth, the ESI Protocol***: The Plaintiffs gave the Defendants a redlined copy of the ESI Protocol—under the auspices of which all discovery in this case must proceed—on March 14, 2018. The Defendants did not respond with their comments to this proposed protocol until May 10, 2018—almost ***two months*** later. This delay will prove to be time-consuming because, although discovery may technically proceed prior to the signing of an ESI protocol, if that discovery fails to comply with the subsequently signed protocol, it must then be reconfigured to conform to that protocol and reproduced. In this respect, the Court should know that the Defendants still have not agreed to the category-based privilege logs the Plaintiffs proposed in their draft of the ESI Protocol—this, despite the fact that Gulfstream has agreed to precisely this form of privilege log in the parallel *Katz* litigation in Georgia. The Defendants' intransigence on this point is significant because the line-by-line privilege log upon which they are insisting—one that requires a separate privilege entry for every single privileged document or email—would take months to compile. For this reason, the bench and bar alike have begun to accept just the kinds of category-based privilege logs the Plaintiffs have here proposed. *See* Committee Note to Local Civil Rule 26.2, S.D.N.Y. (urging parties to move away from document-by-document privilege logs for emails partly because they are extremely expensive and not truly informative); *Guidance and a Model for Categorical Privilege Logs*, E-Discovery Sub-Committee, Committee on State Courts of Superior Jurisdiction, Association of the Bar of the City of New York (collecting federal cases where courts have found category-based privilege logs appropriate), https://www2.nycbar.org/pdf/report/uploads/20072891GuidanceandaModelforCategoricalPrivilegeLogs.pdf; Hon. John M. Facciola & Jonathan M. Redgrave, *Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave Framework*, 4 Fed. Cts. L. Rev

19 (2009) (urging courts to reject document-by-document privilege logs in favor of a categorical approach).

**<u>Sixth, the Global subpoena</u>**: The primary liability question in this case is this: who employed the pilots? The question is material not only because the pilots are arguably covered by the Global Aerospace insurance policy only if they were employed by one of the Defendants, but also because whoever employed the pilots will likewise be liable in *respondeat superior* for their negligence. In fact, the issue is so important that Global has taken the extraordinary step of suing the pilots' widows in state court, seeking a declaration that their now-deceased husbands were not employed by any of the Defendants and thus were not covered by the Global policy. In at least one of those state cases, the widow's personal counsel sought Global's underwriting file as a way of understanding why and how each of the Defendants came to be listed as a "Named Insured" under that policy. The widow—like the Plaintiffs here—argued that the answer to this question is obvious: SK Travel was listed because it owned the plane; Arizin because it leased the plane; and Spiniello because it employed the pilots. Indeed, given that Spiniello has no other connection to the plane, its position as a Named Insured on the policy would seem to make little sense otherwise. Conceding the relevance of the underwriting file to the question of the pilots' employment, Global counsel in the declaratory judgment case provided the widow's lawyer with a copy of that file. But, because that production was subject to a confidentiality designation, the Plaintiffs here had to subpoena Global to obtain our own copy of the file.

Amazingly, despite the fact that, as in the declaratory judgment action, the question of the pilots' employment is the central liability issue in this case, Global has objected to each and every single request contained in our subpoena and has, as of this writing, produced not a single document from the underwriting file. More than that, Global refused, under Fed. R. Civ. P. 45, to

allow the Plaintiffs to bring our motion to compel compliance with the subpoena before this Court—the only Court with a stake in the outcome—presumably as a way of forcing the Plaintiffs to engage in the time-consuming task of filing their motion to compel in a different jurisdiction and then fighting in that jurisdiction to transfer the motion back to this Court. Global, of course, has not engaged in these dilatory tactics merely as a disinterested third party; it is, in fact, the very entity that selected, appointed, and pays each of the defense counsel in this case, and it has directed the Defendants' litigation strategy from the start.

***Seventh, the De Vries Request for Admission***: The Plaintiffs served Requests for Admission ("RFA") on the Estate of Bauke De Vries. The Estate sought an extension, which the Plaintiffs freely gave, and then produced a series of baseless objections and evasive responses that never answered the key question of who employed Mr. De Vries. In essence, Global's appointed counsel responded that Mrs. De Vries does not really know who employed her husband. This is absurd. In fact, Mrs. De Vries is defending herself in the aforementioned declaratory judgment action by arguing that her husband was employed by the Defendants. More than that, Mrs. McDowell, whose husband and Mr. De Vries were identically situated, has admitted, both here and in the declaratory judgment action, that her husband was employed by Spiniello. The upshot, again, is that Global, through its appointed counsel, has thrown up a frivolous obstacle as a way of (1) shielding itself from liability for its insureds' negligence, and (2) forcing the Plaintiffs to waste valuable time and resources in a motion to compel better responses to the RFA.

### III. The Defendants' Status Report

In their status report, the Defendants made a number of representations that require comment. We give four examples.

***First, the production and the hit reports***: On May 15, 2018, the Plaintiffs, through counsel, called the Defendants to say that we would be producing close to 10,000 pages of discovery and hit reports the following day. Despite knowing that this production was coming, the Defendants still filed a status report on May 16, 2018—several hours before the close of business—in which they faulted the Plaintiffs for having failed to produce a single document or hit report since the April 30, 2018 hearing. ECF 356 at 1-2.

***Second, the trusts***: On that same May 15, 2018 call, the Plaintiffs, through counsel, asked the Defendants to clarify what exactly they needed with respect to the Plaintiffs' trusts and the identification of their trustees. On this point, we would be remiss if we did not point out that these kinds of requests are typically made by way of interrogatories—the total number of which this Court has sharply circumscribed. In order to avoid wasting interrogatories, the Defendants have repeatedly sought this kind of information by informal letter. The Plaintiffs, operating in a good-faith effort to move discovery along, ***have never required*** the Defendants to propound interrogatories and have been willing to accommodate ***every one*** of the Defendants' similar requests by letter. In any case, in the May 16, 2018 status report, the Defendants, instead of answering Plaintiffs' counsel's question on the previous day's call, faulted the Plaintiffs for having failed to identify the relevant trusts and trustees—this, despite a concomitant concession that the Plaintiffs' production has satisfactorily provided the answers the Defendants' were looking for all along. ECF 356 at 6 ("Defendants believe they have identified from Plaintiffs' discrete production of documents the names of the trusts to which these individuals—Raymond Chambers, Nancy Zemlak, and Stephen Silver—served as trustees.").

***Third, the "missing documents"***: The Defendants claim that the Plaintiffs' "discrete discovery" is missing "key documents." *Id*. at 4. These documents are not missing. They simply

do not exist. IRS regulations require an individual to retain tax return records for three years only. 26 U.S.C. § 6501(a). The tax returns the Defendants are seeking go back, in some cases, thirty years or more. The Plaintiffs are not required to produce documents that are not in their possession, custody, or control.[3]

**_Fourth, the McDowell Estate_**: The Global lawyers representing the McDowell Estate have filed their own status report, in which they, too, tell the Court that the Plaintiffs have produced no documents in response to the Estate's request for production. ECF 359. Given the Estate's agreement to extend the Plaintiffs' discovery response deadline to May 31, 2018, this assertion, though technically true, is bizarre and of little relevance.[4]

One final aspect of the Defendants' status report bears mention. In the final section, the Defendants ask this Court to compel the Plaintiffs to produce a trial witness list. ECF 356 at 7-9. But the Defendants cite no authority for the proposition that the Plaintiffs should be required, in the middle of fact discovery, to provide such a witness list. Worse, they make no mention of the Court's scheduling order, which expressly requires the parties to exchange witness lists on May 10, **_2019_**. ECF 284. And they do not tell the Court that, when they first asked Plaintiffs' counsel for this witness list, Plaintiffs' counsel responded by asking whether the Defendants were prepared to provide a similar list—a question that went entirely unanswered. In any event, the Defendants' suggestion that such a witness list is required because the Plaintiffs identified more potential witnesses than the Defendants are permitted to depose misses the mark on two fronts. First, the Federal Rules generally allow for each party to take no more than ten depositions. And,

---

[3] Some of these documents may exist in the sets of electronic documents we will be producing in the next few weeks.

[4] The McDowell Estate's claim that, although it agreed to extend the Plaintiffs' discovery response deadline, it somehow did not agree to extend the Plaintiffs' right to proffer objections to the Estate's requests is equally bizarre and baseless.

although most litigants identify more than ten potential witnesses in their initial disclosures, the Defendants cite no precedent for their position that a witness list should be produced one year early whenever the number of identified witnesses exceeds the deposition allotment. Second, the Defendants have made no effort to depose (or to schedule the deposition of) the witnesses they know must be deposed—people like A.J. Agarwal, Drew Katz, Melissa Silver, Kathleen Palella, Nancy Zemlak, and Mr. Katz's doctors and accountants. This confounding inactivity strongly suggests that what the Defendants are seeking is not really assistance with the identification of necessary witnesses so much as an advantage to which neither the Federal Rules nor this Court's scheduling order entitles them.

### IV.  Conclusion

In short, the Plaintiffs have been working diligently to comply with our discovery obligations, and we look forward to discussing any of these issues with the Court.

Dated: May 16, 2018.

DREW KATZ AND MELISSA SILVER, INDIVIDUALLY AND AS THE CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF LEWIS A. KATZ, DECEASED
By their Attorneys,

/s/ Roy K. Altman
Steven C. Marks (admitted *pro hac vice*)
Roy K. Altman (admitted *pro hac vice*)
Dayron Silverio (admitted *pro hac vice*)
Kristina M. Infante (admitted *pro hac vice*)
PODHURST ORSECK, P.A.
SunTrust International Center, Suite 2300
One SE 3rd Avenue
Miami, FL 33131
Telephone: (305) 358-2800
smarks@podhurst.com
raltman@podhurst.com
dsilverio@podhurst.com
kinfante@podhurst.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2018, a copy of the foregoing documents was served by email on all counsel of record listed on the attached Service List.

/s/ Roy K. Altman_____

*Katz et al v. Spiniello Companies, et al.*
D. Mass. (Boston) 1:16-cv-11380-DJC
**COUNSEL SERVICE LIST**

**1. Counsel for Plaintiffs:**
Steven C. Marks, Esq.
Roy K. Altman, Esq.
Dayron Silverio, Esq.
Kristina M. Infante, Esq.
Podhurst Orseck, P.A.
SunTrust International Center
One S.E. Third Avenue,
Suite 2700
Miami, FL 33130
Tel: 305-358-2800 Fax: 305-358-2382
smarks@podhurtst.com
raltman@podhurst.com
dsilverio@podhurst.com
Kinfante@podhurst.com

Leo Boyle, Esq,
Michael B. Bogdanow, Esq.
Meehan, Boyle, Black & Bogdanow, PC Two Center Plaza, Suite 600
Boston, MA 02108-1922
617-523-8300
mbogdanow@meehanboyle.com

**2. Counsel for United States:**
Michael w. Kerns, Esq.
United Sates Department of Justice Torts Division, Civil Division
PO BOX 14271
Washington, D.C. 20044-4172
Tel.: (202) 616-4020 Fax: (202) 616-4159
michael.kerns@usdoj.gov

Orla M. Brady
United States Department of Justice 1425 New York Avenue, NW, #10-100 Washington, DC 20005
(202) 514-0372
Orla.M.Brady@usdoj.gov

**3. Counsel for Honeywell:**
Timothy O.Egan, Esq.
Peabody & Arnold, LLP
600 Atlantic Avenue
Boston, MA 02210
tegan@peabodyarnold.com

Michael G. McQuillen, Esq.
John M. Kelly, Esq. Kurt C. Schlueter
ADLER MURPHY & McQUILLEN LLP 20 S. Clark Street, Suite 2500
Chicago, Illinois 60603 Tel: 312-345-0700 Fax: 312-345-9860
mmcquillen@AMM-LAW.com
jkelly@AMM-LAW.com
kschlueter@amm-law.com

**4. Counsel for McDowell:**
Kevin M. Smith, Esq.
Joseph C. Merschman WIGGIN AND DANA LLP
265 Church Street P.O. Box 1832
New Haven, CT 06508-1832
Tel: 203-498-4579 Fax: 203-782-2889
ksmith@wiggin.com
mmenapace@wiggin.com
jmerschman@wiggin.com

Erik H. Beard, Esq.
Wiggin and Dana LLP 20 Church Street
Hartford, Connecticut 06103
Tel: 860-297-3735
ebeard@wiggin.com

Bethany L. Appleby
Franchise World Headquarters, LLC 25 Sub Way
Milford, CT 06406
203-877-4281
appleby b@subway.com

**5.   Counsel for Arizin Ventures LLC:**
James A. Ruggieri, Esq.
Higgins, Cavanagh & Cooney LLP
The Hay Building
10 Dorrance Street, Suite 400
Providence, RI 02903
401-272-3500
Fax:          401-273-8780
jruggieri@hcc-law.com

J. David Freel, Esq.
HIGGINS, CAVANAGH & COONEY, LLP 123
Dyer Street, 4th Floor
Providence, RI 02903 Tel:
401-272-3500 Fax: 401-
273-8780
dfreel@hcc-law.com

J. Denny Shupe, Esq. Lee
Schmeer, Esq.
SCHNADER   HARRISON   SEGAL   &
LEWIS LLP
1600  Market  Street,  Suite  3600
Philadelphia, PA 19103
Tel:  215-751-2300  Fax:
215-972-7413
dshupe@schnader.com
LSchmeer@Schnader.com

William Janicki, Esq.
Schnader Harrison Segal and Lewis, LLP 650
California St., 19th Floor
San Francisco, CA 94108
(415) 364-6700
wjanicki@schnader.com

**6.   Counsel for Spiniello Companies:** Steve
Arnold, Esq.
SA LAW, P.C.
8 Whittier Place, Suite 1 4F
Boston,  MA  02114
Tel:     617-670-0868
sea@salaw.us

Eugene   Massamillo,   Esq.
Jeanine Driscoll, Esq.
Kaplan, Massamillo & Andrews,
70 East 55th Street, 25th Floor
New York, New York 10022
Tel.: (212) 922-0450 Fax:
(212) 922-0530

emassamillo@kmalawfirm.com
jdriscoll@kmalawfirm.com

**7.   Counsel for SK Travel:**
Timothy J. Fazio, Esq.
Shauna R. Twohig, Esq.
MANION  GAYNOR  &  MANNING LLP 125
High Street
Boston,  Massachusetts  02110  Tel:
617-670-8547
Fax: 617-670-8747
tfazio@mgmlaw.com
stwohig@mgmlaw.com

Christopher R. Christensen, Esq. David
J. Harrington, Esq.
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
Tel: 212-490-9100
Fax:                  212-370-4453
CChristensen@condonlaw.com
DHarrington@condonlaw.com

**8.   Counsel for Gulfstream**
Gary Halbert, Esq.
Holland    &    Knight    LLP
800  17th  Street  N.W.,  Suite  1100
Washington,     DC     20006
202.469.5150
gary.halbert@hklaw.com

Judith Nemsick, Esq.
Stosh Silvos , Esq.
Holland    &    Knight    LLP
31 West 52nd Street
New     York,     NY     10019
212.513.3514
judy.nemsick@hklaw.com
stosh.silvos.@hklaw.com

**9.   Counsel for Shelly de Vries:**
Patrick T. Bradley, Esq.
Oliver Beiersdorf, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
(212)                      521-5400
obeiersdorf@reedsmith.com
pbradley@reedsmith.com
rgaudreau@reedsmith.com